Bradley, J.
On the evening of April 4, 1884, the plaintiff, at Rochester, took passage upon the defendant’s train for Albion, her place of residence.
The train arrived there between eleven and twelve o’clock, and in alighting from it the plaintiff fell, and it is alleged that the injuries complained of were occasioned by the fall, and that it was caused by the failure of the defendant to stop its train a reasonable time to enable her to get off, and in starting it up suddenly and with a jerk while she was in the act of doing so, and thus throwing her from the steps of the car to the ground, or onto the platform of the depot. The evidence on the part of the plaintiff tends to prove that the train did not stop at the station a sufficient time for her to get off. And there is evidence to the effect that the time was one minute and that it was two minutes. The train was upwards of a half an hour late, which may account somewhat for a purpose not to allow any unnecessary delay in it passage.
It was the duty of the defendant to afford by its stops at stations a reasonable opportunity for passengers to leave the train with safety. And at the same time reasonable diligence on their part was required. Some other passengers left the train without difficulty there on that occasion. And while there was evidence tending to prove that sufficient time was given to passengers to alight from it, the question presented was one of fact, upon which the evidence was sufficient to support the conclusion that the defendant did not give a reasonable or proper time for the passengers to get off the train before starting it, and that in this respect the defendant was in fault and chargeable with negligence.
It is contended by the learned counsel for the defendant that the plaintiff not only failed to establish the fact that she was free from contributory negligence, but that it appears that she was not, and that her fall was occasioned by her own fault. There is evidence to the effect that the train had started and was in motion, and that she knew it while she was on her way out of the car, and before she had passed through the door on to its platform. And some to the effect that the train started while she was at the car door and on the platform, and before she had proceeded *806 to go down the steps to alight. There is no legal excuse for a passenger to attempt to leave the car of a train when in motion, and when it is done voluntarily" the passenger assumes the hazard, and any injury sustained by him is deemed in some degree the consequence of his own negligence, and he is without remedy. Morrison v. Erie R'y Co., 56 N. Y . 302; Burrows v. Erie R'y Co., 63 N. Y., 556.
The evidence going in support of the plaintiff’s case in this respect, rests mainly upon her testimony, and that of her husband (who was at the train to meet her), which is that she got out of her seat and started with her packages for the door of the car, and was met by her husband, who took her packages and said to her, “ Hurry up; ” that the train was late, and proceeded out of the car, and she followed him closely; that when he had reached the lower or last step of the car, and she the first or upper one, the train started, and with a jerk that threw or jerked him and her from the steps, and thus caused her to fall. If this was true, the conclusion was permitted that the plaintiff was without negligence. Their evidence is to the effect that the plaintiff proceeded to leave the car with reasonable diligence, and heard and saw nothing indicating a purpose to start the train, or by way of caution to her not to attempt then to alight, and that this sudden movement given to the train, which caused her to fall, was without any warning that came to her hearing.
The evidence of one witness who was a passenger, and left the train at Albion, is that she followed the plaintiff out of the car, and on her way out and when standing in the car door, the latter said to her: “Be careful, the train is going;” and that the train was then moving. Another witness, standing outside, says she saw the witness last referred to inside the car, going towards the door, when the train started and was moving; that she did not see any one ahead of her, or notice anybody other than such witness. There is other evidence tending to prove that the train started before the plaintiff proceeded to go down the steps of the car. It is forcibly urged on the part- of the defendant, that the evidence on this subject is such as to require the conclusion of the court that the verdict in that respect is against the weight of the evidence. We think the court is not justified in overruling the finding of the jury on the question of contributory negligence. That was a question of fact which could not properly have been taken from the jury. The proposition upon which the plaintiff’s right to recover depended had the support of some evidence, and that not a mere “ scintilla of evidence ” or surmise, but was found in the affirmative, and in terms direct—statements, in the testimony of witnesses.
*807 The value of this testimony was dependent largely upon the credibility to which it was entitled. And that inquiry involved the consideration of the interest of the witnesses and the conflict of their statements with those of the other witnesses. These are well recognized matters for the determination of the jury, and peculiarly so, by reason of the opportunity they had to see the witnesses on the stand and hear them testify, and take such aid as those means might furnish in estimating their character and credibility and in measuring the value of their statements. The finding that the plaintiff was not chargeable with contributory negligence is not so against the weight of the evidence in the view which the jury was at liberty to take of it, as to permit interference with the verdict in that respect. Thurber v. H. B. and F. R. R. Co., 60 N. Y., 326; Stackus v. N. Y. C. and H. R. R. R. Co., 79 id., 464; Payne v. T. and B. R. R. Co., 83 id., 572; Greany v. Long Island R. R. Co., 101 id., 419.
The amount of damages which should be allowed to the plaintiff, when it was determined that she was entitled to recover, was dependent upon the extent and effect of the injury which she received on the occasion, and from the cause before mentioned.
This was also a question of controversy and of conflict of evidence. She had some years before been afflicted with a physical difficulty or disease, from which she had not entirely recovered, but which was still liable to afflict.
And there was some medical expert evidence, that the condition of which she complained may have come from such previous organic trouble, while the evidence of the members of the medical profession who had examined and treated her, was to the effect that the injury in question caused a serious physical condition, attributable to no other cause, and that her previous infirmity was not likely to develop symptoms which followed such injury.
Much evidence was given by the plaintiff and others on this subject, in view of all which we are not able to say that the jury over estimated the amount of damages she had sustained and was entitled to recover. A medical witness on the part of the plaintiff was asked a question, which embraced more, but in view of what followed and of the answer given, it maybe treated as this inquiry, “ From what you know of the condition of this woman from the time this existed and your examination, what is the probability of her recovering from the injury?” This was objected to as “speculative and hypothetical,” and exception was taken to the ruling permitting the answer. The witness answered: “It is impossible for a man to foretell what the result of such a trouble would be?’ And the further question, *808 “What, in your judgment, will probably be the result as to whether she will probably recover from it or not?” being asked, followed by the remark of the court: “He simply asks you whether you think she will recover.” The witness answered: “Judging from the symptoms, as they are manifest, I think there is no evidence of recovery. There is not much probability under the circumstances.” The defendant’s motion to strike out the latter part of the answer having been denied, exception was taken.
And another medical witness was asked: “Tell what, in your judgment, would probably be the result—whether she would probably recover from it ? ” The objection to which was overruled and exception taken. The witness answered: “I should think it was rather improbable that she would recover entirely. Taking into consideration the time that has elapsed, and the fact that she was not better now that she was immediately after the injury, it is my idea that she would not get better.”
These witnesses had, by examination and treatment of the plaintiff, become somewhat familiar with her condition, and the symptoms which represented it, up to the time of the trial, which was had one year and six months after the injury. It was competent to show the consequences which would follow in future from such cause, and as bearing upon that we think it was proper to take the judgment of medical experts as to the probable, result. Lincoln v. Saratoga and S. R. R. Co., 23 Wend., 425; Filer v. N. Y. C. R. R. Co., 49 N. Y., 42, 45; Strohm v. N. Y., L. E. and W. R. R. Co., 96 id., 305; Buel v. N. Y. C. R. R. Co., 31 id., 314.
By the questions to which the objections were taken the witnesses were called upon to express their judgments of the probable result of the particular injury in question, not what might follow it,' nor whether she might or might not recover, but whether, in their judgment, she would probably recover from the effects of the injury. The future consequences of an injury must have a degree of probability amounting to a reasonable certainty to be the basis of the estimate of damages, and the evidence of such results must necessarily rest somewhat upon the judgment of experts. And while they cannot express with absolute certainty the developments and future results which will come from the cause and its immediate effects, experience may enable the witnesses to intelligently have and express their opinions of the probable continuance and the ultimate consequences of a defined physical condition resulting from an injury.
In the Strohm Case the court are not understood by us to have held that the opinion of medical witnesses of the probable future effect of an injury was not competent, but *809 that the error of the trial court there was in permitting the witness to state what a certain kind of injury might, in his opinion, develop in future; that it is not sufficient that certain consequences may, or are likely to follow, because evidence to that effect is merely speculative. This view of that case is strengthened by the fact that Filer v. N. Y. C. R. R. Co.(49 N. Y., 42), is cited thereby the court without criticism. The inquiry, to be competent, must relate and be confined to the particular injury in question, and to the consequences attributable to it which will follow and affect the person who suffered it. That was the inquiry in this case. And while the answer following the first question, that it was “ impossible for any man to foretell what the result of such a trouble will be,” evinced some difficulty on the part of the witness in determining the future consequences of the plaintiff’s injury, we think it did not disqualify him to express his judgment on the subject if he had any The mere matter of degree of intelligence with which an opinion is expressed, and the difficulty of doing it, unless so great as to exclude the opportunity for medical opinion, goes to the value rather than to the competency of the evidence.
No other question seems to require consideration.
The judgment and order should be affirmed.
Haight, J., concurs.